A.G. ASSANTI & ASSOCIATES, PC.
Alessandro G. Assanti, Esq. (State Bar No. 181368)
9841 Irvine Center Dr., Suite 100
Irvine, CA. 92679
Email: aassanti@assantilaw.com
v. (949)540-0439; f. (949) 540-0458

Attorneys for Plaintiffs, Ozdurak Pamuk Dokumain,
Tekstil Sanatyi Ye Ticaret Ltd. Sti.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ozdurak Pamuk Dokumain<br><br>Tekstil Sanatyi ve Ticaret Ltd. Sti.,<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE, & CO. a Delaware Corporation, Unknown Owner(s) of JP MORGAN CHASE & CO., Account ending in 3179, and DOES 1-25 inclusive,<br><br>Defendants. | Case No. 8:21-cv-1456<br><br>**COMPLAINT FOR:**<br><br>**1) FRAUD**<br>**2) UNJUST ENRICHMENT;**<br>**3) TORTIOUS INTERFERENCE WITH BENEFICIAL COMMERCIAL RELATIONSHIP;**<br>**4) CIVIL CONSPIRACY;**<br>**5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; and**<br>**6) DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL**<br>**(F.R.C. P. Rule 38)** |

1

COMPLAINT FOR DAMAGES

Plaintiff OZDURAK PAMUK DOKUMA TEKSTIL SANATYI VE TICARET LTD. STI., hereinafter, ("Ozdurak" or "Plaintiff Ozdurak") for its Complaint against the Defendants listed below alleges as follows:

**JURISDICTION**

1.  This Court has subject matter jurisdiction over the First Claim for Relief herein pursuant to 28. U.S.C. §1331 and 1332 in that they arise under United States Statute 18 U.S. C. § 1962 (RICO). There is also complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over the remaining Claims for Relief pursuant to 28 U.S.C. §1367 in that they arise from the same nucleus of operative facts as the First Claim for Relief over which this Court has original jurisdiction and as such are so related to that Claim that they form part of the same case or controversy under Article III of the United States Constitution.

**VENUE**

2.  Venue is proper in this District pursuant to 28 U.S.C §1391(b)(2) as a substantial number of the events giving rise to this action occurred in this District, and also under 18 U.S.C. § 1965(b).

**PARTIES**

3.  Plaintiff Ozdurak ("Ozdurak") is Turkish corporation duly established under the laws of the Country of Turkey, and is in business internationally, and specifically in United States.

4.  Plaintiff Ozdurak is informed and believes that Defendant JPMORGAN CHASE & CO, is a national banking institution organized and existing under the laws of the State of Delaware, with its principal place of business at 270 Park Avenue, New York, New York 10017, and may be served by serving its registered agent, CT Corporation System, 1999 Bryant St., Ste. 900, Dallas, Texas 75201-3136.

5.  Plaintiff is informed and believes and on that basis alleges that Defendant, the Unknown Owner or Owners of JP MORGAN CHASE & CO Account ending in 3179, is believed to be a limited liability company with its principals and beneficial owners doing business in Orange County California, and internationally. However, the true identity and

2

COMPLAINT FOR DAMAGES

location of this party is unknown to Plaintiff. Upon further prosecution of this action, Plaintiff Ozdurak shall seek process of service on such party in accordance with the California Rules of Civil Procedure.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

6. Plaintiff Ozdurak is a Turkish corporate entity engaged in the business of importing/exporting cotton material to manufacture cotton products. As a part of its business, Plaintiff Ozdurak purchases certain products from vendors located throughout the world. Among those vendors is Vittera BV ("Viterra"), a Netherland based company that is owned directly or indirectly by Glencore, a multinational entity that operates in multiple jurisdictions in U.S.

7. Vittera provides Plaintiff Ozdurak with American cotton.

8. On or about October 28, 2020, Ozdurak placed an order with Viterra for raw US cotton for delivery to Turkey. This has been an ongoing part of its business for many years, and Ozdurak maintained the same purchase protocol with Vittera as it has done for years.

9. After submitting a purchase order, it is the customary practice of Viterra to invoice Ozdurak in connection with the same, at which point Ozdurak processes a wire payment as directed by Viterra.

10. After placing the product order, representatives of Ozdurak received various emails purporting to come from representatives of Viterra. Said emails contained invoices stating that payment should be wired to a Chase branch in McAllen, Texas to Account No. 701083179 (the "Account at Issue").  Further, on or around May 3, 2021, Ozdurak received a certain "Authorization Letter for Payment" stating payment should be made to the same account.   Acting on such information, Ozdurak wired payment in the amount of $664,285.92 to the Account at Issue on March 16, 2021.

11. Almost immediately after sending the payment, Ozdurak representatives learned no Viterra employee or representative had sent the alleged invoice or payment letter.

12. Further, Plaintiff Ozdurak learned that Viterra did not have any Chase account open in McAllen, Texas. It was therefore apparent that the communications, invoices and payment authorization were part of fraudulent and criminal scheme to induce Ozdurak to wire funds

COMPLAINT FOR DAMAGES

to the Account at issue (with the obvious intention to abscond with the Ozdurak's funds once the fraudulent wire is received in the fraudulent bank account belonging to the Defendants).

13. Thereafter, Ozdurak, by and through counsel in California, notified its Turkish bank, Chase, and the Turkish and US federal authorities of the fraud.

14. As of the date herein, Chase has not returned the fraudulently acquired funds to Plaintiff Ozdurak and the same remain in the fraudulent Chase account as described herein.

15. Plaintiff Ozdurak has learned that the fraudulent scheme of masquerading as a vendor to trick a company to wire funds to a fraudulent account set up for the purpose of advancing a criminal scheme to abscond with wrongly wired funds, is common.

16.  Plaintiff through its counsel in California and Texas has attempted to persuade Chase to return the fraudulent wire and provide information about the fraudulent account where Ozdurak's funds remain presently, and at this time, the Plaintiff seeks an order of the Court to compel JP MORGAN CHASE & CO to turn over the funds to the Plaintiff, its rightful owner.

**FIRST CLAIM FOR RELIEF**

**(Fraud)**

**(Against Defendants Unknown Owners of JP MORGAN CHASE & CO.,**

**Account ending in 3179, and  Does 1 -25, Inclusive)**

17.  Plaintiff Ozdurak realleges and incorporates by reference, as though set forth in full paragraphs 1 through 16, above.

18.  Plaintiff Ozdurak is informed and believes and thereon alleges that Defendants and their agents have knowingly misrepresented, omitted, and concealed material facts in directing Plaintiff Ozdurak to make a wire to a bank account that had nothing to do with Vittera. The Defendants' false representations are detailed throughout this complaint. These false representations include but are not limited to (1) their claim that payment to the aforementioned account is for the cotton that Plaintiff Ozdurak purchased from Viterra; (2) their  claim that  Viterra is the beneficial owner of the aforementioned account, (3) introducing false documents and communication via email, and  (4) the claims that Vittera

4

COMPLAINT FOR DAMAGES

controls the aforementioned account; (5) the claim that the emails are from managers and or employees of Viterra or Viterra related companies.

19.   Defendants made these false representations and statements to Plaintiff Ozdurak and to JP Morgan Chase as they organized the aforementioned account, while knowing that their representations were materially false and/or omissions were material.

20.    Defendants made these false representations and false submissions to Plaintiff Ozdurak and JP Morgan Chase in the hopes getting the fraudulent account opened and in misleading Ozdurak to wire funds to that account so that Defendants could abscond with the funds, but either withdrawing them or sending them to other accounts with other banking institutions. These false representations and false submissions were relied on Plaintiff Ozdurak and JP Morgan Chase in setting up the account and wiring funds there.

21.    Ozdurak has been substantially harmed as a result of the Defendants' fraudulent conduct in the amount of at least $664,285.92.

22.    Defendants are guilty of recklessness, oppression, fraud and malice Therefore, Ozdurak is entitled to punitive damages against each of them.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

**(Against Defendants Unknown Owners of JP MORGAN CHASE & CO.,**

**Account ending in 3179, and  Does 1 -25, Inclusive)**

23. Plaintiff Ozdurak realleges and incorporates by reference, as though set forth in full paragraphs 1 through 22, above.

24. Defendants have caused Plaintiff Ozdurak to be deprived of over $664,285.92 of operating capital that it needs to conduct its business, not including legal and administrative expenses.

25.  Therefore, the Defendants have obtained Plaintiff's money through their tortious, illegal, and fraudulent conduct, as set forth herein.

5

COMPLAINT FOR DAMAGES

26.  Principles of equity require that this Court prevent Defendants from stealing Plaintiff Ozdurak's funds and disrupting Ozdurak's business operations and relationships with its vendors.

27. Because of the Defendants' fraudulent activity, they have been unjustly enriched, all to the detriment of Ozdurak in an amount of at least $664,285.92.

## THIRD CLAIM FOR RELIEF

### Tortious Interference with Beneficial Commercial Relationship

### (Against Defendants Unknown Owners of JP MORGAN CHASE & CO.,

### Account ending in 3179, and  Does 1 -25, Inclusive)

28. Plaintiff Ozdurak realleges and incorporates by references, as though set forth in full, paragraphs 1-27, above.

29. Defendants at all times were aware of the contract between Vittera and Ozdurak or became aware of the business relationship between Plaintiff Ozdurak and Vittera soon after the fraud was perpetrated by Defendants' beneficial owners of the JP Morgan Chase Account 3179.

30.   On or about October 28, 2020, Ozdurak placed an order with Viterra for raw US cotton for delivery to Turkey, where Ozdurak is based and operates its cotton business. This has been an ongoing part of its business for many years, and Plaintiff Ozdurak maintained the same purchase protocol with Vittera as it has done for years.

31. After submitting a purchase order, it is the customary practice of Viterra to invoice Ozdurak in connection with the same, at which point Ozdurak processes a wire payment as directed by Viterra.

32. After placing the product order, representatives of Ozdurak received various emails purporting to come from representatives of Viterra. Said emails contained invoices stating that payment should be wired to a Chase branch in McAllen, Texas to Account No. 701083179 (the "Account at Issue").  Further, on or around May 3, 2021, Ozdurak received a certain "Authorization Letter for Payment" stating payment should be made to the same

6

COMPLAINT FOR DAMAGES

account.   Acting on such information, Ozdurak wired payment in the amount of $664,285.92 to the Account at Issue on March 16, 2021.

33. Almost immediately after sending the payment, Ozdurak representatives learned no Viterra employee or representative had sent the alleged invoice or payment letter. In fact, the email communication was conducted by imposters pretending to be employees of Vittera.

34. Further, Plaintiff Ozdurak learned that Viterra did not have any Chase account open in McAllen, Texas. It was therefore obvious that the communications, invoices and payment authorization were part of an intricate fraudulent and criminal scheme involving bank accounts, corporate espionage, and electronic communication timed to appear credible to induce Ozdurak to wire funds to the fraudulent account at issue (with the obvious intention to abscond with the Plaintiff Ozdurak's funds once the fraudulent wire is received in the fraudulent bank account belonging to the Defendants).

35. Thereafter, Plaintiff Ozdurak, by and through its counsel in California, notified its Turkish bank, JP Morgan Chase, and the Turkish and US federal authorities including law enforcement officials of the fraud that the Defendants beneficial owners of the JP Morgan Chase Account 3179.

36. Plaintiff Ozdurak's counsel had numerous communications via telephone, email, and text with counsel for JP Morgan Chase, Lucia Santos, who acknowledged that she is aware of the alleged fraud and the details unequivocally documenting it, and that funds shall remain in the JP Morgan Chase account 3179 frozen, until a resolution is reached that meets JP Morgan Chase procedural requirements to contain its liability in cases such as the fraud alleged herein.

37.  Plaintiff Ozdurak is informed and believes and on that basis alleges that Defendants beneficial owners of the JP Morgan Chase Account 3179 are deliberately aimed to disrupt Ozdurak's business relationship with its vendors to damage Ozdurak's business and reputation.

38. Plaintiff Ozdurak is informed and believes, and on that basis alleges that as of the date herein, Chase has not returned the fraudulently acquired funds to Plaintiff Ozdurak and the same remain in the fraudulent Chase account as described herein.

7

COMPLAINT FOR DAMAGES

39.   By their fraudulent activity as alleged herein, Defendants have caused harm to Plaintiff Ozdurak's business operations, and its ability to service its vendors, and perform its obligations in a timely manner.

40.   Because of the Defendants' fraudulent conduct, Ozdurak lost significant operating capital and experienced disruption in its operations and damages of at least $664,285.92

41.   Defendants are guilty of recklessness, oppression, fraud and malice within the meaning of Civil Code § 3294. An award of punitive and exemplary damages is justified in an amount according to proof.

## **FOURTH CLAIM FOR RELIEF**

### **Civil Conspiracy**

**(Against Defendants Unknown Owners of JP MORGAN CHASE & CO.,**

**Account ending in 3179, and  Does 1 -25, Inclusive)**

42.   Plaintiff Ozdurak realleges and incorporates by references, as though set forth in full, paragraphs 1-41, above.

43.   At all relevant times herein, Defendants beneficial owners of the JP Morgan Chase Account 3179, and all of them, formed a civil conspiracy to misappropriate Plaintiff Ozdurak's interest in Ozdurak through the use of fraud and other unlawful acts.

44.   As a direct result of the Defendants' beneficial owners of the JP Morgan Chase Account 3179 conspiracy, Ozdurak has been damaged in that it lost nearly $700,000 USD by means of the fraudulent conduct of the defendants.

45.   Defendants Beneficial Owners of the JP Morgan Chase Account 3179 are guilty of recklessness, oppression, fraud and malice within the meaning of Civil Code § 3294. An award of punitive and exemplary damages is justified in an amount according to proof.

8

COMPLAINT FOR DAMAGES

## FIFTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

**(Against Defendants Unknown Owners of JP MORGAN CHASE & CO.,**

**Account ending in 3179, and  Does 1 -25, Inclusive)**

46. Plaintiff realleges and incorporates by reference, as though set forth in full, paragraphs 1-45, above.

47.  Defendants were aware of the reputational and business damage their actions have caused to Plaintiff Ozdurak. Defendant JP Morgan Chase even after becoming aware of the fraudulent scheme refused to return the fraudulently wired funds.

48. The Defendant acted intentionally as lack of response to Plaintiff Ozdurak and actions were designed to cause and did cause extreme emotional distress.

49. The conduct has injured, harmed Plaintiff in an amount that is in excess of the minimum jurisdiction of this court, which will be proven at the time of trial.

50. Plaintiff also prays for punitive damages in an amount that will punish and deter others from engaging in such extreme, outrageous, malicious and vile conduct in an amount that will exceed the minimum jurisdiction of this Court.


## SIXTH CLAIM FOR RELIEF

### Declaratory Relief with Request for Temporary, Preliminary and Permanent Injunctive Relief

**(Defendants JP MORGAN CHASE, & CO. a Delaware Corporation, and Does1 -25, Inclusive)**

51. Plaintiff realleges and incorporates by reference, as though set forth in full, paragraphs 1-50, above.

52. Plaintiff is informed and believes and thereon alleges that an actual controversy exists between Plaintiff and Defendants, relative to the funds that are sitting in the Defendants' banking institution under the account No. ending in xxx3179.

9

COMPLAINT FOR DAMAGES

53. Plaintiff prays that the Court adjudicate the rights, interests, duties and obligations of Plaintiff and Defendants with regards to the subject funds that are sitting in the Account Ending in xxx3179.

54. In conjunction therewith, Plaintiff requests that this Court issue a temporary, preliminary and permanent injunctive relief, with prohibits Defendants named herein from taking any action to transfer the right, title, interest or possession to the subject funds during the pendency of these proceedings, including but not limited to hypothecating, encumbering, or transferring said funds

**WHEREFORE,** Plaintiff prays for judgment against Defendants, as follows:

**On The First Claim for Relief**

1. For general damages according to proof at trial but no less than $664,285.92,

2. For prejudgment interest according to statute; and

3. For Plaintiffs' reasonable attorneys' fees and costs according to statute, 18 U.S.C. 1964(c).

**On the Second through Fifth Claims For Relief:**

1. For general damages according to proof at time of trial;

2. for punitive damages in an amount that will punish and deter others from engaging in such extreme, outrageous, malicious and vile conduct in an amount that will exceed the minimum jurisdiction of this Court.

3. For general damages according to proof in an amount of no less than $664,285.92

**On the Sixth Cause of Action for Relief:**

1. For the issuance of temporary, preliminary and permanent injunctive relief, which prohibits Defendants named therein from taking any actions to transfer right, title, interest, or possession to the subject funds during the pendency on these proceedings, including but not limited to hypothecating, encumbering or transferring said funds.

10

COMPLAINT FOR DAMAGES

2. For a declaration of Plaintiff and Defendants' respective rights, duties interests and obligations with respect to said funds sitting in JP Morgan Chase & Co., bank account ending in ; and

3. For such other and further relief as the Court may deem just and proper.

**On All Causes Of Action**

1. For interest on all amounts found to be due to Plaintiff from Defendants, at the rate allowed by law, from the date said amounts or any part thereof became or becomes due.

2. For such other and further relief in favor of Plaintiff as the Court deems just and proper.

3. For attorney's fees and costs where appropriate.

DATED:  September 1, 2021                    Respectfully submitted,

A.G. Assanti & Associates, PC



Alessandro G. Assanti, Esq.
Attorney for Plaintiff Ozdurak

11

COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiffs, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands a trial by jury of all issues so triable in the present action.


DATED:  September 1, 2021                          A.G. Assanti & Assoc., PC.




Alessandro G. Assanti, Esq.
Attorney for Plaintiff Ozdurak

12

COMPLAINT FOR DAMAGES